IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GREGORY JACK ALMOND and
TERESA ROBERTS ALMOND

    *Plaintiffs*

    v.

 RANDOLPH COUNTY, ALABAMA;
THE RANDOLPH COUNTY
COMMISSION; SHERIFF DAVID
COFIELD; LARRY CLARK, JR.;
BERNARD SHEPPARD; RANDY
MOORE; DONNIE STRAIN; KEVIN
WALKER; GREG JOHNSON;
NATHANIEL MORROW; and
WILLIAM LANE

    *Defendants*

Case No.

3:19-cv-175-WKW

Jury Demand

## THIRD AMENDED COMPLAINT

COME NOW the plaintiffs, Gregory Jack Almond and Teresa Roberts Almond and file this Third Amended Complaint alleging and showing unto the Court as follows:

## THE PARTIES

1) Plaintiff Gregory Jack Almond (hereinafter referred to as "Greg") is an adult resident of Randolph County, Alabama.

1

2)  Plaintiff Teresa Roberts Almond (hereinafter referred to as "Teresa") is an adult resident of Randolph County, Alabama.

3)  Defendant Randolph County, Alabama (hereinafter referred to as "the County") is a governmental entity created pursuant to the laws of the State of Alabama.  Its actions as a governmental entity are "state actions" within the meaning of the Fourteenth Amendment to the United States Constitution.

4)  Defendant Randolph County Commission (hereinafter referred to as "the Commission") is the governing body of Randolph County pursuant to the Constitution and laws of the State of Alabama.  Its actions as a governmental entity are "state actions" within the meaning of the Fourteenth Amendment to the United States Constitution.

5)  Defendant Sheriff David Cofield (hereinafter referred to as "Sheriff Cofield") is an adult resident of Randolph County, Alabama.  Suit is brought against him in his individual capacity.  At all times pertinent to the allegations of this Complaint, Defendant Sheriff Cofield was the Sheriff of Randolph County and the head of the Randolph County Sheriff's Department.  The Randolph County Sheriff's Department is an integral part of the State of Alabama, and the actions of its Sheriff are "state actions" within the meaning of the Fourteenth Amendment to the United States Constitution.  The actions of Sheriff Cofield alleged herein were taken in response to instructions from and under the direction of the Randolph County

2

Commission and are attributable to the Randolph County Commission based on general principles of agency.

6)  Defendant Larry Clark, Jr., (hereinafter referred to as "Deputy Clark") is an adult resident of Randolph County, Alabama.  Suit is brought against him in his individual capacity.  At all times pertinent to the allegations of this Complaint, Defendant Deputy Clark worked as a law enforcement officer who served as a member of a narcotics unit in Randolph County made up of law enforcement officers from cities, municipalities, and the Sheriff's Department.

7)  Defendant Bernard Sheppard (hereinafter referred to as "Deputy Sheppard") is an adult resident of Randolph County, Alabama.  Suit is brought against him in his individual capacity.  At all times pertinent to the allegations of this Complaint, Defendant Deputy Sheppard worked as a law enforcement officer who served as a member of a narcotics unit in Randolph County made up of law enforcement officers from cities, municipalities, and the Sheriff's Department.

8)  Defendant Randy Moore, (hereinafter referred to as "Deputy Moore") is an adult resident of Randolph County, Alabama.  Suit is brought against him in his individual capacity.  At all times pertinent to the allegations of this Complaint, Defendant Deputy Moore worked as a law enforcement officer who served as a member of a narcotics unit in Randolph County made up of law enforcement officers from cities, municipalities, and the Sheriff's Department.

9)  Defendant Donnie Strain, (hereinafter referred to as "Deputy Strain") is an adult resident of Randolph County, Alabama.  Suit is brought against him in his individual capacity.  At all times pertinent to the allegations of this Complaint, Defendant Deputy Strain worked as a law enforcement officer who served as a member of a narcotics unit in Randolph County made up of law enforcement officers from cities, municipalities, and the Sheriff's Department.

10)  Defendant Kevin Walker (hereinafter referred to as "Deputy Walker") is an adult resident of Randolph County, Alabama.  Suit is brought against him in his individual capacity.  At all times pertinent to the allegations of this Complaint, Defendant Deputy Walker worked as a law enforcement officer who served as a member of a narcotics unit in Randolph County made up of law enforcement officers from cities, municipalities, and the Sheriff's Department.

11)  Defendant Greg Johnson, (hereinafter referred to as "Deputy G. Johnson") is an adult resident of Randolph County, Alabama.  Suit is brought against him in his individual capacity.  At all times pertinent to the allegations of this Complaint, Defendant Deputy G. Johnson worked as a law enforcement officer who served as a member of a narcotics unit in Randolph County made up of law enforcement officers from cities, municipalities, and the Sheriff's Department.

12)  Defendant Nathaniel Morrow, (hereinafter referred to as "Deputy Morrow") is an adult resident of Randolph County, Alabama.  Suit is brought against

him in his individual capacity.  At all times pertinent to the allegations of this Complaint, Defendant Deputy Morrow worked as a law enforcement officer who served as a member of a narcotics unit in Randolph County made up of law enforcement officers from cities, municipalities, and the Sheriff's Department.

13) Chief Deputy William Lane (hereinafter "Chief Deputy Lane") is an adult resident of Randolph County, Alabama.  Suit is brought against him in his individual capacity.  At all times pertinent to the allegations of this Complaint, Chief Deputy Lane worked as a law enforcement officer who served as a member of a narcotics unit in Randolph County made up of law enforcement officers from cities, municipalities, and the Sheriff's Department.

14)  Deputy Clark, Deputy Sheppard, Deputy Moore, Deputy Strain, Deputy Walker, Deputy G. Johnson, Deputy J. Johnson, Deputy Dot, Deputy McDaniel, and Deputy Morrow, all named above, are sometimes hereinafter referred to collectively as "the Randolph County Deputies" or "members of the Randolph County Narcotics Unit."

15) The Randolph County Narcotics Unit (hereinafter "the Narcotics Unit") is an entity comprised of members of the Randolph County Sherriff's Department, Wedowee Police Department, and Roanoke Police Department, Randolph County and the Randolph County Commission. Both Wedowee and Roanoke are municipalities within Randolph County. Plaintiffs are informed and believe and

upon such information and belief charge the facts to be that the Narcotics Unit operates at the discretion and direction of Sheriff Cofield. Plaintiffs are informed and believe and upon such information and belief charge the facts to be that the Randolph County Commission has a bank account listed as Randolph County Commission "dba Randolph County Narcotics Unit". Plaintiffs are unaware under which, if any, legal or constitutional authority the Randolph County Narcotics Unit is acting, or even if it is a legal entity under the laws of the State of Alabama. For this reason, the Narcotics Unit is not a named Defendant.

## **JURISDICTION**

16) This is an action for legal and equitable relief to redress violations of Plaintiffs' constitutional rights. This suit is brought to secure the protection of and to redress the deprivation of rights secured under the Fourth, Fifth, Eighth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983. The jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 28 U.S.C. §§ 2201 and 2202.

17) Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1341(3) and (4) and the aforementioned constitutional and statutory provisions. Plaintiff further invokes the pendant jurisdiction of this Court to herein decide claims arising out of State Law pursuant to 28 U.S.C. § 1367.

18)    Venue is proper under 28 U.S.C. §1391 as the events in question occurred in Randolph County, Alabama.

## FACTUAL BACKGROUND

19)  On or about the 31st day of January 2018, Teresa Almond was at the Almond's residence located at 1675 County Road 71, Woodland, Alabama, which is in the rural part of Randolph County, Alabama.  At approximately 2:00 p.m. on that day, Deputy Morrow arrived at the Almonds' home and stated that his purpose there was to serve paperwork related to a civil matter on Greg Almond.

20)  Teresa informed Deputy Morrow that Greg was not at home but that he should return in about two hours.  Teresa invited Deputy Morrow to return at that time.

21)  According to Deputy Morrow, he smelled marijuana inside the residence. Based on Deputy Morrow's alleged smell, a search warrant was obtained via telephone, and members of the Narcotics Unit convened in less than two (2) hours.

22)    Teresa was not using marijuana when Deputy Morrow was present at her residence, nor had she used it prior to Deputy Morrow's coming to her residence. She disputes that the smell of marijuana was inside the residence.

23)  Later the same afternoon, Greg Almond returned home.  Soon thereafter, members of the Narcotics Unit, ascended upon the Almond's residence, and one of the members of the Narcotics Unit kicked in the door of the Almonds' residence.

7

24)  After kicking in the door, one of the members of the Narcotics Unit threw a "shock" explosive device inside the residence.  Greg, who was in route to open the door of the residence, was injured when the explosive device blew up at his feet.

25)  Some members of the Narcotics Unit forcibly threw both Greg and Teresa to the floor.  The members of the Narcotics Unit ransacked the Almonds' home. Inside the home, the members of the Narcotics Unit claimed to have found one "roach"/partially smoked marijuana cigarette and one small plant less than one foot tall, which members of the Narcotics Unit believed to be marijuana.  Outside in a grill, members of the Narcotics Unit discovered a small baggy with a small amount of leafy substance, which they believed to be marijuana.  The total amount of marijuana allegedly found at the Almonds' residence would have had a street value of $50.00 or less.  Possession of such a small amount marijuana is a misdemeanor in the State of Alabama.  However, none of the marijuana seized in the raid belonged to either Greg or Teresa.

26)  No contraband was found on the person of either Greg or Teresa.

27)  Inside the Almond residence, there were two safes which housed an extensive collection of over 80 guns, some of which are antiques; approximately $8,000.00 in cash; jewelry; and other personal items, including prescription medications. Members of the Narcotics Unit directed Greg and Teresa to open the safes, and they complied.  Inside the safes, the members of the Narcotics Unit claim

to have found ONE *LUNESTA* PILL outside of the bottle in which it had been prescribed. *Lunesta* is a non-narcotic class IV controlled substance prescribed to aid sleep. All of the above mentioned property (and more) was seized by the members of the Narcotics Unit. Further, the property was not inventoried in the presence of the Almonds as required by the *Alabama Rules of Criminal Procedure*.

28) Greg and Teresa were both arrested by the members of the Narcotics Unit and taken to jail. They were detained until the following day, at which time they bonded out of jail.

29) The initial arrest report (which was posted online) had both Greg and Teresa falsely charged with manufacturing a controlled substance. These charges were later amended to possession of marijuana, a misdemeanor, and possession of a controlled substance (the *Lunesta* pill), a felony.

30) Greg and Teresa have a 27-year-old son who went to the Randolph County Sheriff's Office after his parents were arrested without just cause. The Almonds' son confessed that the marijuana belonged to him and did not belong to his parents. Despite that fact, the Randolph County Sheriff's Department continued to pursue prosecution, and the cases were bound over to the August 2018 term of the Grand Jury. No indictment was returned during that Grand Jury session.

31) During the spring 2019 term of Grand Jury in Randolph County, Alabama, after notice of intent to file this lawsuit had been filed with Randolph

County, the Grand Jury returned indictments against Greg Almond and Teresa Almond, charging each of them with (a) possession of marijuana in the second degree and (b) possession of drug paraphernalia, both of which charges are misdemeanors.

32)  Neither Greg nor Teresa--who have been married for over 30 years and are parents and grandparents--have any criminal history or have ever been arrested for anything prior to this incident.

33)  Greg and Teresa made numerous complaints to the Randolph County Sheriff's Department, but no action was taken.

34)  Greg and Teresa allege that after making complaints to the Sheriff's Department, they and their family have been harassed by members of the Sheriff's Department.

35) The Almonds are informed and believe and upon such information and belief charge the facts to be that it is the pattern and practice of the Randolph County Narcotics Unit and Sheriff's Department to illegally seize property of defendants on misdemeanor offenses and never file civil forfeiture proceedings.

36)  Greg Almond and Teresa Almond allege that items of personal property seized from their home were lost, stolen, damaged, depleted in value, and/or otherwise disposed of by members of the Randolph County Sheriff's Department, without Plaintiffs' knowledge or permission.

37)  Because of the humiliation and indignities suffered by Greg Almond and Teresa Almond, both are hesitant to go into public places in and around the County of their residence.  They have both suffered great embarrassment and humiliation and continue to suffer such embarrassment and humiliation because of the activities of the defendants as described in this Complaint.

38)  On April 15, 2019, the Circuit Court of Randolph County ordered that the criminal charges brought against Greg Almond and Teresa Almond be dismissed, and that their property which had been seized be returned to the Almonds.

39)  Not all of the Almonds' property was returned to them by the Defendants. Property that was not returned includes cash, jewelry, guns, power equipment, a coin collection, and a guitar collection. Some of the cash that was seized on Wednesday January 31, 2018 by the members of the Narcotics Unit was deposited into a bank account the following Tuesday--nearly a week later. The account it was deposited into is an account for the Randolph County Commission "dba Randolph County Narcotics Unit." The inventory does not describe the denominations of the currency that was seized from the Plaintiffs.

40)  Of the property that was eventually returned to the Plaintiffs, damage had occurred to the property, dramatically diminishing its value.  For example, many of the antique guns, which were in the Defendants' exclusive possession for over a year, were returned to the Plaintiffs with pitting and rust reducing their value.

41)     Plaintiffs were denied the use (and ability to invest/earn interest) of their money which was seized and in Defendants' possession for over a year.

42)     Plaintiffs have suffered, and continue to suffer, physical and mental pain and emotional distress from said injuries and public indignities caused by the Defendants; and they will continue in the future to suffer mental pain and emotional distress from said injuries caused by the Defendants.

43)  As a proximate result of the Defendants' conduct, the Plaintiffs' physical injuries and mental and emotional pain and suffering caused by the Defendants have adversely affected the Plaintiffs' home and family life, have impaired and hindered the Plaintiffs in the performance of their accustomed daily activities, and have greatly restricted the Plaintiffs' ability to engage in activities to which they were otherwise accustomed, such as visiting public places.

### *CLAIMS BROUGHT AGAINST DEFENDANTS RANDOLPH COUNTY AND THE RANDOLPH COUNTY COMMISSION*

### COUNT ONE:

### CONVERSION

44)  A portion of the cash money that was taken from the Plaintiffs' home was deposited into the general account of the Randolph County Commission, for which a large part of that money remains unaccounted.  If this money was seized as evidence, it should have been in the evidence room for inspection and should not have been deposited into the general fund of the Randolph County Commission.

45)     Defendants Randolph County and the Randolph County Commission converted the money seized from the Plaintiffs for the use and possession of Randolph County and/or the Randolph County Commission for over a year.

46)  The actions of Defendants Randolph County and the Randolph County Commission as alleged herein constitute conversion.

WHEREFORE, Plaintiffs demands judgment in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus attorneys' fees and costs.

### *CLAIMS BROUGHT AGAINST DEFENDANTS DAVID COFIELD, WILLIAM LANE AND LARRY CLARK, JR., IN THEIR INDIVIDUAL CAPACITIES*

### COUNT TWO:

### NEGLIGENT AND WANTON HIRING, TRAINING AND SUPERVISION

47)     Defendant David Cofield was the Sheriff of Randolph County during the events relevant to this action.

48)     Defendant William Lane was the Chief Deputy for the Randolph County Sheriff's Department during the events relevant to this action.

49)     Defendant Larry Clark, Jr. was in a leadership role for the Randolph County Sheriff's Department during the events relevant to this action.

50)     Defendants Cofield, Lane, and Clark owed a duty of care to the Plaintiffs in selecting persons to serve on the Randolph County Narcotics Unit and

in training and supervising those individuals. The duty of care included ensuring that members of the Narcotics Unit would not violate the civil and natural rights of the citizens of Randolph County.

51)    Defendants breached their duty of care.

52)    On or about February 2019, Defendant Chief Deputy Lane was indicted for criminal conduct involving his position with the Randolph County Sheriff's Department.

53)    In February 2019, Defendant Chief Deputy Lane was indicted for eleven (11) counts of using his official position for personal again, one count of first-degree theft of property, and 28 counts of fraudulent use of credit or debit cards related to a Sheriff's Department bank account.

54)    Defendants Cofield, Lane and Clark failed to adequately hire, train and supervise members of the Narcotics Unit in a way to protect the Plaintiffs' rights.

55)    The members of the Narcotics Unit, under the supervision and control of Lane, Cofield, and Clark, violated the Plaintiffs' constitutional due process rights, rights to be free from excessive force, and rights to be free from unlawful searches and seizures.

56)  Defendants' actions were also tortious.

57)   Defendants were negligent and/or wanton in the hiring, training and supervision of the members of the Narcotics Unit.

WHEREFORE, Plaintiffs demands judgment in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus attorneys' fees and costs.

### CLAIM BROUGHT AGAINST DEFENDANTS LARRY CLARK, JR., KEVIN WALKER AND RANDY MOORE IN THEIR INDIVIDUAL CAPACITIES

### COUNT THREE:

### CONVERSION

58)  Defendants Clark, Moore, Walker, seized money and property from the Plaintiffs' home.

59)   Despite a court order directing the return of all of the Plaintiffs' property, Defendants Clark, Moore, and Walker have yet to return some of the Plaintiffs' property, including cash, jewelry, guns, power equipment, a coin collection, and a guitar collection. The property that was returned was damaged.

60)   Upon information and belief, Defendants Clark, Moore, and Walker were the last persons in possession and control of the Plaintiffs' property.

61)   Defendants Clark, Moore, and Walker have converted the Plaintiffs' property for their own use.

62)    The actions of Defendants Clark, Moore, and Walker constitute conversion.

WHEREFORE, Plaintiffs demands judgment in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus attorneys' fees and costs.

### *CLAIM BROUGHT AGAINST DEFENDANTS BILLY LANE, LARRY CLARK, JR., KEVIN WALKER AND RANDY MOORE IN THEIR INDIVIDUAL CAPACITIES*

### **COUNT FOUR**

MALICIOUS PROSECUTION

63)    Defendants Lane, Clark, Walker, and Moore directed, encouraged, and/or influenced the criminal prosecution of the Plaintiffs.

64)    The criminal charges brought against the Plaintiffs were without merit.

65)    The criminal charges brought against the Plaintiffs were pursued by the Defendants even after the Plaintiffs' son admitted that marijuana found at the residence of the Plaintiffs belonged to him.

66)    The criminal charges brought against the Plaintiffs were pursued with malice and a motive to retain possession of the property seized from the Plaintiffs by the members of the Narcotics Unit.

67)     The criminal charges brought against the Plaintiffs were eventually dismissed by the Circuit Court of Randolph County.

68)     Defendants Lane, Clark, Walker, and Moore maliciously prosecuted the Plaintiffs, causing them injury.

WHEREFORE, Plaintiffs demands judgment in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus attorneys' fees and costs.

*CLAIM BROUGHT AGAINST DEFENDANTS LARRY CLARK, JR., DONNIE STRAIN, BERNARD SHEPHERD, AND GREG JOHNSON MORROWIN THEIR INDIVIDUAL CAPACITIES*

## COUNT FIVE

### 42 U.S.C. §1983
### FOURTH AMENDMENT
### VIOLATION OF CIVIL RIGHTS BY
### USE OF UNNECESSARY AND EXCESSIVE FORCE

69)     While raiding the Almonds' home, Defendants Clark, Sheppard, Strain, and, G. Johnson, kicked in the door to the Plaintiffs' home.

70)     While raiding the Plaintiffs' home, Defendants Clark threw an explosive device which landed at Greg's feet, causing him injury when it exploded.

71)     While raiding the Plaintiffs' home, Defendants Clark, Sheppard, Strain, and G. Johnson threw both Mr. Almond and Mrs. Almond to the floor, causing both of them harm.

72)     Neither of the Plaintiffs had a prior criminal record.

73)     Neither of the Plaintiffs acted in a confrontational or violent manner toward the members of the Randolph County Narcotics Unit.

74)     The controlled substances discovered by the members of the Randolph County Narcotics Unit; i.e., a *Lunesta* pill and less than $50 worth of marijuana, did not evidence any violent or threatening behavior by the Plaintiffs.

75)     Under the Fourth Amendment to the United States Constitution, Greg and Teresa had a right to be free from unreasonable searches and seizures and to be free from the use of excessive force.

76)     The actions of Defendants Clark, Sheppard, Strain, and G. Johnson, violated the Plaintiffs' Fourth Amendment right to be free from the use of excessive force. It would have been clear to a reasonable law enforcement officer under the same or similar circumstances that use of force to the extent that it was used was inappropriate.

77)     As a direct and proximate result of the violations of Plaintiffs' civil rights by Defendants Clark, Sheppard, Strain, and G. Johnson have suffered the damages as herein above alleged.

WHEREFORE, Plaintiffs demands judgment pursuant to 42 USC §1983 in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus attorneys' fees and costs.

***CLAIM BROUGHT AGAINST DEFENDANTS LARRY CLARK, JR., DONNIE STRAIN, BERNARD SHEPHERD, GREG JOHNSON, KEVIN WALKER, RANDY MOORE, AND NATHANIEL MORROW IN THEIR INDIVIDUAL CAPACITIES***

## COUNT SIX

### 42 U.S.C. §1983
### ILLEGAL SEARCH AND SEIZURE IN VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION

78)     On or about January 31, 2018, Deputy Morrow attempted to serve papers in a civil matter at the Plaintiffs' home.

79)     Deputy Morrow spoke with Plaintiff Teresa Almond who advised him that her husband, Plaintiff Greg Almond, would return home later.

80)     Teresa was courteous to Deputy Morrow and did not act in any manner to give probable cause to believe she was engaging in any illegal behavior.

81)     The smell of any drugs was not in the home of the Almonds at the time Deputy Morrow attempted to serve civil papers.

82)     Neither Greg nor Teresa had ever bn accused of a crime, and there were no pending criminal charges against them when Deputy Morrow attempted service of civil papers on January 31, 2018.

83)     No probable cause existed to enter the Plaintiffs' home, conduct any search of the premises, and/or seize any of the Plaintiffs' property.

84)     Defendants claim to have obtained a search warrant telephonically prior to the raid.

19

85)     The is no recorded transcript of a warrant being issued.

86)     Defendants to not have a signed warrant or copy of any warrant at the time of the raid.

87)     The inventory of the items seized was not done in the presence of the Almonds.

88)     Despite the lack of probable cause, Defendants Clark, Sheppard, Moore, Strain, Walker, G. Johnson, and Morrow kicked in the door of the Plaintiffs' home, ransacked their home, and demanded that the Plaintiffs open locked safes and private areas of their home. The search revealed a misdemeanor amount of marijuana belonging to the Plaintiffs' adult son and one *Lunesta* pill.

89)     Despite the lack of probable cause, Defendants Clark, Sheppard, Moore, Strain, Walker, G. Johnson,and Morrow seized from the Plaintiffs approximately $8,000 in cash belonging to the Plaintiffs, along with a collection of 80 guns (some of which are antiques), jewelry, and other personal items.

90)     Defendants Clark, Sheppard, Moore, Strain, Walker, G. Johnson, and Morrow violated the Plaintiffs' Fourth Amendment rights to be free from unreasonable searches and seizures by entering their home, searching their home, and seizing their property.

91)     Defendants' actions injured the Plaintiffs.

WHEREFORE, Plaintiffs demands judgment pursuant to 42 U.S.C. §1983 in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus attorneys' fees and costs.

## COUNT SEVEN

OUTRAGE/INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

92)    Plaintiffs incorporate by reference all prior paragraphs of this complaint as if set out here in full to give context and meaning to the allegations set forth in this Count.

93)    Defendants Clark, Sheppard, Moore, Strain, Walker, G. Johnson, and Morrow acted in a way which shocks the conscience and would have been known to a reasonable person to cause emotional distress when they:

      a)      Made a false allegation about the smell of marijuana being in the Plaintiff's home;

      b)      Kicked in the door the Plaintiffs' home;

      c)      Threw an explosive at the feet of Greg Almond;

      d)      Slammed Plaintiffs to the floor;

      e)      Seized thousands of dollars of property and cash from the Plaintiffs;

      f)      Falsely charged the Plaintiffs with criminal acts;

g)    Continued prosecution of the Plaintiffs when their son claimed responsibility for the marijuana seized;

h)    Permitted law enforcement to harass the Plaintiffs when they complained the Defendants' actions were unlawful;

i)    Returned portions of Plaintiffs' property in a state which diminished its value;

j)    Retained or lost some of Plaintiffs' property, even after being ordered by the Circuit Court of Randolph County to return it.

94)  The actions of Defendants Clark, Sheppard, Moore, Strain, Walker, G. Johnson, J. Johnson, Dot, McDaniel, and Morrow constitute the tort of outrage.

WHEREFORE, Plaintiffs demand judgment in such an amount of compensatory and punitive damages as a jury deems reasonable, and may award, plus attorneys' fees and costs.

## <u>COUNT EIGHT</u>

### DECLARATORY JUDGMENT THAT THE ALABAMA CIVIL FORFEITURE STATUTE,  CODE OF ALABAMA  § 20-2-93, AS WRITTEN AND APPLIED, IS UNCONSTITUTIONAL

95)  Plaintiffs incorporate by reference all prior paragraphs of this complaint as if set out here in full.

WHEREFORE, Plaintiffs ask this court to send the issue to the Supreme Court of Alabama as a certified question establishing parameters as to when property may

be seized by law enforcement, specifically that civil forfeiture does not apply to misdemeanor drug offenses or drug offenses for personal use.

Respectfully submitted this 5th day of October, 2021.

Respectfully submitted by counsel for Plaintiffs,

/s/ John Michael Segrest
John Michael Segrest (ASB-8306-H58S)
The Segrest Law Firm
PO Box 780791
Tallassee, AL 36078
Phone: 334-252-0036
Mike.Segrest@SegrestLaw.com

/s/ Heather Newsom Leonard
Heather Newsom Leonard (ASB-1152-O61H)
Heather Leonard, PC
2105 Devereux Circle, Suite 111
Birmingham, AL 35243
Phone: 205-977-5421
Heather@HeatherLeonardPC.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served on all counsel of record, as identified below, on October 1, 2021, via the Court's electronic filing service, by electronic mail, or by placing a copy of same in the U.S. Mail, postage prepaid and addressed as follows:

Charles Richard Hill, Jr., Esq.
Capell & Howard, PC
P.O. Box 2069
Montgomery, AL  36102
Rick.hill@chlaw.com

W. Jackson Britton, Esq.
Capell & Howard, PC
P.O. Box 2069
Montgomery, AL  36102

23

Jackson.britton@chlaw.com

Robert M. Spence, Esq.
Rosen Harwood, PA
P.O. Box 2727
Tuscaloosa, AL  35403
rspence@rosenharwood.com

Randall C. Morgan, Esq.
Hill Hill Carter Franco Cole & Black
425 South Perry St.
Montgomery AL  36104
rmorgan@hillhillcarter.com

Paul A. Clark, Esq.
Hill Hill Carter Franco Cole & Black
31 Inverness Ctr Pkway, Ste. 120
Birmingham, AL  35242
pclark@hillhillcarter.com

Charles David Stubbs, Esq.
Stubbs, Sills & Frye, PC
P.O. Box 2023
Anniston, AL  36202
David-ssf@cableone.net

Steve Marshall, Esq.
Alabama Attorney General
P.O. Box 300152
Montgomery, AL  36130
smarshall@ago.state.al.us

/s/ *John Michael Segrest*
OF COUNSEL